UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :          **MEMORANDUM AND ORDER**
            -against-                              :          08-CR-877 (DLI)
                                                   :
ERIC MANSON,                                       :
                                                   :
                                Defendant.    :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Eric Manson ("defendant") moves to dismiss this violation of supervised release proceeding. Defendant contends that the delay of more than five years from the issuance of the warrant for revocation of his supervised release to the execution of the warrant violated defendant's right to due process. The government opposes. For the reasons stated herein, the Court finds that the time lapse between the issuance of the warrant and the execution of the warrant did not violate defendant's due process rights.

## BACKGROUND

**A.    Timeline**

1998 – Defendant was charged with four counts of bank robbery in violation of 18 U.S.C. § 2113(a), a class C felony. Defendant pled guilty to all counts, and he was sentenced by the Honorable William W. Caldwell of the United States District Court for the Middle District of Pennsylvania to 105 months of imprisonment and three years of supervised release.

May 9, 2007 – Defendant was released from prison, and his term of supervised release began.

March to December 2008 – Defendant committed a string of robberies in Manhattan and Brooklyn, including the robbery of a Sovereign Bank, a Marathon Bank, a Loews movie theater, and two Duane Reade drugstores.

December 9, 2008 – Jurisdiction over defendant's supervised release was transferred to the United States District Court for the Eastern District of New York ("EDNY").

December 10, 2008 – The Probation Department ("Probation") petitioned the Court for a warrant revoking defendant's supervised release.

December 11, 2008 – The Court issued a warrant for revocation of defendant's supervised release, which was lodged as a detainer.

December 15, 2008 – Defendant was placed in custody.

August 11, 2009 – Defendant pled guilty in New York County to robbery in the third degree, in violation of New York State Penal Law 160.05, a class D felony, for his robbery of the Sovereign Bank.

August 12, 2009 – Defendant was writted into federal custody; soon after, he began assisting the government in its investigation of his cellmate, who was charged with narco-terrorism conspiracy.

September 29, 2009 – Defendant was sentenced in New York County to ten years' imprisonment.

December 3, 2009 – Defendant pled guilty in Kings County to robbery in the third degree, in violation of New York State Penal Law 160.05, a class D felony, for his robbery of the Marathon Bank.

January 13, 2010 – Defendant was sentenced in Kings County to ten years' imprisonment, concurrent with the New York County sentence.

April 14, 2010 – Defendant pled guilty in the United States District Court for the Southern District of New York ("SDNY"), pursuant to a cooperation agreement, to three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, a class C felony, for his robberies of the Loews theater and two Duane Reade drugstores.

June 10, 2013 – Defendant was sentenced by the Honorable Denny Chin, Second Circuit Judge, to 48 months' imprisonment, concurrent with the New York County and Kings County sentences, followed by three years supervised release. The 48-month term commenced on the date of sentencing.

February 25, 2014 – The December 2008 warrant was executed, more than 5 years after it was issued.

March 6, 2014 – Probation filed an addendum to the December 10, 2008 Report, adding as a basis for the violation, *inter alia*, defendant's conviction in the SDNY.

April 17, 2014 – Defendant filed the instant motion.

**B.     Sentencing before Judge Chin**

At the June 10, 2013 sentencing before Judge Chin, the government moved pursuant to Section 5K1.1 of the United States Sentencing Commission Guidelines Manual (the "Guidelines"), in light of defendant's substantial assistance to the government. (Tr.[1] at 3.) Defendant asked Judge Chin to impose a sentence that would allow him to remain in federal custody during the remaining term of his state sentence. (Tr. at 3-4.) At the time of

---

[1] Citations to "Tr." refer to the transcript of the sentencing proceeding before Judge Chin on June 10, 2013.

sentencing, defendant had served approximately 54 months of his state sentences, and defendant's lawyer estimated that he had approximately four years remaining, with a release date around June 2017.

Judge Chin indicated that, although he "would do something shorter probably," he was "inclined to impose a sentence that gets Mr. Manson roughly to [the end of his state sentence]. . . in federal custody." (Tr. at 8-9.) Since defendant had been held in federal custody pursuant to a writ from the state, and, as such, would not be able to get federal credit for the time already spent in jail, Judge Chin imposed a sentence effective as of the date of sentencing, rather than from the date defendant was writted into federal custody. (Tr. at 9-11.) Accordingly, defendant was sentenced to 48 months' imprisonment, concurrent with the New York County and Kings County sentences, followed by three years supervised release.

## DISCUSSION

**A.     Legal Standard**

The constitutional protections for revocation of supervised release are "the same as those afforded for revocation of parole or probation." *United States v. Ramos*, 401 F.3d 111, 115 (2d Cir. 2005) (quoting *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000)). Although "the conditional freedom of a [supervised releasee] is a liberty interest protected by the Due Process clause of the Fourteenth Amendment . . . the Supreme Court does not . . . attach to revocation proceedings the full range of procedural safeguards associated with a criminal trial . . . ." *Id.* (internal citations omitted). The Second Circuit has held that "delay between a defendant's violation of supervised release and the execution of the violation warrant does not, in and of itself, violate a defendant's due process rights." *Id.* (quoting *Sanchez*, 225 F.3d at 175).

However, such a delay can result in a due process violation where "the delay does in fact prejudice the defendant by substantially limiting the ability to defend against the charge that the conditions of supervised release were violated." *Id.* at 116.

In *Ramos*, the defendant claimed that a two-year delay from the filing of the violation petition and the execution of the warrant violated his due process rights. 401 F.3d 111. The court found that the delay did not constitute a due process violation, because it did not hinder Ramos's defense against the supervised release violation charge. *Id.* at 116.

In *Sanchez*, which was relied on by the Second Circuit in *Ramos*, the defendant was arrested in New Jersey while on supervised release in connection with a prior federal conviction. *Sanchez*, 225 F.3d at 174. He pled guilty to the New Jersey charges and was sentenced. *Id.* More than four years after the New Jersey arrest, the Probation Department sought a warrant for Sanchez's violation of the conditions of his supervised release. *Id.* Similar to the defendant in the instant case, Sanchez contended that the four-year delay violated his due process rights, arguing that he suffered significant prejudice because "it is possible that the New Jersey case would have resulted in a sentence concurrent to that federal sentence." *Id.* The Second Circuit Court of Appeals held that the delay was not, in and of itself, a due process violation. *Id.* at 175. The court also found that Sanchez was not prejudiced by the delay because the district court had the power to grant the equivalent of a concurrent sentence retroactively, and Sanchez brought forth no evidence that either the New Jersey State Court or the New York district court would have imposed concurrent sentences. *Id.* at 176.

### B.     Parties' Arguments

Defendant contends that he was prejudiced because he "voluntarily gave up a sentence of time served from Judge Chin . . . to insure his safety due to the nature of his substantial assistance." (Def.'s Mem. at 6, Doc. Entry No. 16.) Defendant claims the delay thus prejudiced him by "depriving him of the opportunity to accept a sentence of time served from Judge Chin . . . thus placing him at risk of more overall time in custody." (Def.'s Mem. at 2.)

The government responds that defendant has failed to show he was prejudiced by the delay in executing the warrant for revocation of supervised release. Defendant does not claim that the delay impeded his ability to defend against the violation charge. (Gov. Mem. at 6, Doc. Entry No. 17 (citing *Ramos*, 401 F.3d at 115)). The government further argues that defendant's claim that he may have received a shorter sentence from Judge Chin is "premature and speculative." (Gov. Mem. at 6.)

### C.     Ruling

Defendant has failed to show that he was prejudiced by the delay in executing the warrant. First, defendant does not allege, let alone show, that the delay hindered his defense against the supervised release violation charge. *Ramos*, 401 F.3d at 116. Second, to the extent that a due process violation can be established on the basis that the defendant was deprived of a potentially shorter sentence, defendant's argument fails as well. It is mere speculation to believe that defendant would have received a shorter overall sentence had this Court sentenced him before Judge Chin did. Judge Chin was free to impose a concurrent sentence ending at the same time as defendant's state sentences, independent of the sentence imposed by this Court. If this court had sentenced defendant before Judge Chin and imposed a consecutive sentence,

commencing after defendant's state court sentences ended, Judge Chin still could have imposed a concurrent sentence in order for defendant to serve out his state sentence in federal custody. In either case, defendant's total term of imprisonment would be the same as if this Court sentenced him after Judge Chin.

In any event, Judge Chin had no authority over defendant's violation proceeding in this Court, and the proceedings before Judge Chin do not affect the proceedings before this Court, other than to provide conclusive proof of some of the violation charges. Additionally, Judge Chin had before him the presentence report in the SDNY case, which included information about defendant's sentence in the instant matter. Accordingly, Judge Chin would have known that defendant had violated the conditions of his supervised release for which he potentially could receive a prison term.

Moreover, this case was handled properly by Probation and consistently with the general practice of executing violation warrants <u>after</u> other criminal matters are resolved. Typically, the Probation Department awaits the disposition of new criminal matters before proceeding with the violation matter for the same offense conduct. Notably, defense counsel nearly always request that violation proceedings be held in abeyance pending the outcome of the new criminal matters, given the lower burden of proof imposed on the government in a violation proceeding compared to a criminal trial. In this case, the violation petition was based in part on the robberies for which defendant was ultimately convicted and sentenced in New York and Kings Counties, and in part on the SDNY conviction which was added by way of Probation's March 6, 2014 Amended Report. The state charges were not resolved until defendant was sentenced in Kings County on January 13, 2010. Then, in April 2010, defendant pled guilty in the Southern

7

District to three counts of Hobbs Act robbery. He was sentenced on June 10, 2013. The violation warrant was executed a few months thereafter. Significantly, defendant has at least three years left to serve on the state and federal sentences already imposed. The defendant has not alleged an inability to defend against the violation charges.

In sum, defendant has failed to show that the delay in executing the warrant violated his due process rights. Defendant's ability to defend the violation charge is unhindered. Defendant's claim that he would have received a lower sentence had his violation been adjudicated before he was sentenced in the Southern District is sheer speculation. Defendant also fails to acknowledge that this Court's authority over his violation is independent of Judge Chin's authority over defendant's case in the SDNY. As such, this Court has unfettered discretion, upon a finding of guilt as to any of the violations, to impose the sentence it deems reasonable, under all the circumstances of this case, whether concurrent or consecutive to the sentences defendant is now serving. Finally, Probation acted properly in this matter, and consistently with the practice of this and other districts, by awaiting the resolution of the criminal convictions underlying defendant's violation before executing the warrant.

## CONCLUSION

For the reasons set forth above, defendant's motion is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      May 29, 2014

                                                /s/
                                  DORA L. IRIZARRY
                              United States District Judge